```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TEHUTI BAT'Z ELOHIM BEY,
a/k/a ZACKARY HOWARD BLACK,
#18509-111,                                                          **NOT FOR PUBLICATION**

                    Plaintiff,                                       **MEMORANDUM & ORDER**
                                                                     15-CV-7237 (PKC) (ST)
        - against-

MICHAEL FERNANDEZ, JAMES HOLT,
and THE DEPARTMENT OF HOMELAND
SECURITY,

                    Defendants.
------------------------------------------------------------------X
```
PAMELA K. CHEN, United States District Judge:

Plaintiff Tehuti Bat'z Elohim Bey, a/k/a Zackary Howard Black ("Bey" or "Plaintiff"), appearing *pro se* and proceeding *in forma pauperis*, brings this action, pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against Defendants Michael Fernandez ("Fernandez"), James Holt ("Holt"), and the Department of Homeland Security ("DHS"). Plaintiff alleges violations of his Fourth, Fifth, and Fourteenth Amendment rights to be free from unreasonable seizure, false arrest, false imprisonment, and malicious prosecution in connection with his July 2, 2013 arrest and subsequent prosecution for methylone ("Molly") related charges. Pending before the Court is Defendants' motion to dismiss the Amended Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or in the alternative, a motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated herein, the Court grants Defendants' motion for summary judgment, and dismisses this case.

# BACKGROUND

I.  **Statement of Facts**[1]

On April 24, 2013, a package from China arrived at a United States Postal Service ("USPS") facility at John F. Kennedy International Airport ("JFK"). (Ex. 1 at ECF 6, ¶ 2.)[2] Upon inspecting the package, custom agents at JFK found methylone ("Molly"). (Ex. 1 at ECF 6, ¶ 3.) On April 29, 2013, DHS Homeland Security Investigations ("HSI") arranged a controlled delivery of the package to a United Parcel Service ("UPS") store on 115th Street between Broadway and Riverside Drive in Manhattan. (*Id*. at ¶ 4.)

On April 24, 2013, Plaintiff rented a blue Mustang from Thrifty Rental Car Company ("Thrifty") in Windsor Lock, Connecticut. (FAC and SAC, at ¶ 2.) Five days later, on April 29, Plaintiff drove the blue Mustang to the aforementioned UPS store with two other individuals. (FAC and SAC, at ¶ 1.) Plaintiff exited the vehicle and went into the UPS store, as the other two individuals drove the vehicle around the block. (Ex. 1 at ECF 8, ¶¶ 9-10.) Shortly thereafter, one of the individuals ("Individual 1") left the car and entered the UPS store. (*Id*. at ¶¶ 10-11.) Plaintiff and Individual 1 did not acknowledge each other in the store. (*Id*. at ¶ 11.) Plaintiff left the UPS store first and saw several federal agents pursue Individual 1 after he left the store. (FAC and SAC, at ¶¶ 12-19; Ex. 1 at ECF 9, ¶ 12.) Upon witnessing this, Plaintiff turned and left the area on foot. (*Id*.) Plaintiff abandoned the blue Mustang at the scene and traveled to California. (FAC and SAC, at ¶¶ 18-20, 25, 32-34.)

---

[1] Pursuant to Local Civ. R. 56.1, these facts are taken from Plaintiff's First and Second Amended Complaints ("FAC", Dkt. 20, and "SAC", Dkt. 32), Plaintiff's Exhibit 1 ("Ex. 1", Dkt. 19-1, at ECF 5-11), and Defendants' Brief ("Defs.' Br.", Dkt. 42-2). Exhibit 1 contains the sealed Complaint and Affidavit in Support of the Arrest Warrant against Tehuti Bat'z Elohim Bey, a/k/a Zackary Howard Black, in *U.S. v. Black*, No. 13-CR-316 (DLI)(CLP).

[2] "ECF" refers to the pagination generated by the CM/ECF docketing system and not the document's internal pagination.

Defendant Fernandez, an HSI Special Agent, was present at the scene of the UPS store on April 29, 2013, conducting surveillance during the controlled delivery. Acting as lead agent, Fernandez directed Defendant Holt, another HSI Special Agent, to conduct a search of the blue Mustang after observing Plaintiff and the other two individuals arrive on the scene in the Mustang, and after observing the controlled delivery. (Ex. 1 at ECF 8, ¶¶ 9-10, 13; FAC and SAC at ¶¶ 22-27.) A Thrifty Rental Car Company receipt for the vehicle was recovered during the search. (FAC and SAC at ¶ 23.)

On June 10, 2013, Defendant Fernandez submitted a sworn affidavit detailing the controlled operation at the UPS store on April 29, 2013. (Ex. 1 at ECF 5-11.) The affidavit stated that Plaintiff's companions were arrested at the scene, but that Plaintiff had "evaded arrest and left the scene on foot." (*Id*. at ECF 9, ¶ 12.) Defendant Fernandez indicated in the affidavit that he was present at the UPS store conducting surveillance during the controlled delivery and had confirmed Plaintiff's presence at the UPS store by reviewing surveillance video from the store and comparing both his personal observations and the surveillance video to Plaintiff's passport and driver's license. (*Id.* at ¶ 13.)

On June 10, 2013, based on Defendant Fernandez's affidavit, the Honorable Vera M. Scanlon, Magistrate Judge in the Eastern District of New York, signed a warrant for Plaintiff's arrest. (*United States v. Black*, 13-CR-316 (DLI)(CLP), Dkt. 1.) On July 2, 2013, Plaintiff was arrested in California and extradited to the Eastern District of New York. (FAC and SAC at ¶¶ 32, 34.) Plaintiff was charged with four counts of Molly-related trafficking crimes: conspiracy to import, importation, conspiracy to possess with intent to distribute, and attempted possession with intent to distribute methylone or "Molly". (*Black*, 13-CR-316, Dkt. 13.)[3] Two of the four Molly-

---

[3] The controlled substance "3,4-methylenedioxy-N-methylcathinone", also referred to as "methylone" in the original and superseding indictments, was referred to colloquially in Plaintiff's criminal trial as "Molly", a Schedule I controlled substance under 21 U.S.C. §§ 841(a)(1) and 846.

3

related charges were subsequently dropped from the indictment, but charges relating to other drug-trafficking activity, were added. (*Id.*, Dkts. 55, 120.) At trial, Plaintiff was acquitted of the remaining two Molly-related charges, but convicted of conspiracy to distribute and possess with intent to distribute marijuana, and conspiracy to commit money laundering. (*Id.*, Dkts. 176, 179, 207.) On May 18, 2017, the United States Court of Appeals for the Second Circuit affirmed Plaintiff's convictions. (*Id.*, Dkt. 239.)

## II. Procedural History

On October 7, 2015, Plaintiff filed his initial *pro se* complaint in this action against Defendants Fernandez and Holt, Assistant United States Attorney ("AUSA") Kevin Trowel, and an unidentified Thrifty employee (John Doe) for violating his constitutional rights under the Fourth, Fifth and Fourteenth Amendments, in connection with his arrest and prosecution for the Molly-related charges.[4] (Dkt. 1 at ¶ 43.) In response to the Court's March 2, 2016 order dismissing the complaint without prejudice (Dkt. 16), Plaintiff filed the FAC on June 13, 2016 (Dkt. 20).[5] On December 13, 2016, Plaintiff filed a motion to amend the FAC (Dkt. 25) and filed the SAC (Dkt. 32). The Court granted Plaintiff's Motion to amend the FAC and file the SAC on December 21,

---

(*See Black*, 13-CR-316, Dkts. 13, 55, 120, and Dkt. 215, Criminal Trial Transcript, 27:16-21 ("Methylone is an illegal drug that's chemically similar to MDMA, the main ingredient in the club drug ec[s]tasy, and it goes by the street name Molly.").)

[4] Plaintiff does not allege any claims in this action with regard to his prosecution and conviction on the money laundering and marijuana conspiracy charges. (*See Black*, 13-CR-316, Dkts. 55, 120, 176, 179, 207, and 239.)

[5] Plaintiff amended the Complaint to name Fernandez and Holt as the only Defendants. (Dkt. 20 at ¶ 3.) In accordance with the Court's May 31, 2017 Memorandum and Order (Dkt. 28), Defendants were served with Plaintiff's Amended Complaint dated June 13, 2016 (Dkt. 20). The Court denied Plaintiff's request to stay this action pending disposition of a Federal Tort Claims Act administrative claim that he purportedly submitted to the Department of Homeland Security regarding the same set of underlying events. (Dkt. 28.) At that time, the Court also notified Plaintiff that he could seek leave to further amend his complaint upon proper exhaustion of any FTCA claims (*id.*), but Plaintiff has not done so.

2016. (Dkt. 26.) Although the SAC technically supersedes the FAC, in light of Plaintiff's *pro se* status, the Court construes Plaintiff's Operative Amended Complaint to include both his FAC and SAC. (Dkts. 20, 32.)

Defendants served their motion to dismiss, supporting documents, and required notices pursuant to Local Civ. R. 12.1 and 56.2 on Plaintiff on January 26, 2018. (Dkts. 40, 42, 42-2, 42-3.) Plaintiff failed to serve his response. On March 13, 2018, Defendants requested that the Court deem their motion to dismiss "unopposed and fully submitted, or alternatively, that Plaintiff be provided with a brief extension of time to serve and file his opposition." (Dkt. 41.) The Court granted Defendants' leave to file the motion to dismiss, but also granted Plaintiff an additional thirty days to file a response, with the warning that if he failed to do so, "his opposition will be deemed forfeited." (March 13, 2018 ECF Order.) Defendants subsequently filed their motion to dismiss for lack of jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively. (Dkt. 42.) On May 3, 2018, the Court found that Plaintiff had forfeited his right to file an opposition due to his failure to comply with the Court's March 13, 2018 order, and declared Defendants' motion to be fully briefed. (*See* May 3, 2018 ECF Order.)

## STANDARDS OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(1)

A claim must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)), in which case, "the party asserting subject matter jurisdiction 'has the burden of

proving by a preponderance of the evidence that it exists.' " *Id.* (quoting *Makarova*, 201 F.3d at 113).

As a preliminary matter, in the Second Circuit, a Rule 12(b)(1) motion generally "cannot be converted into a Rule 56 motion." *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986); *see also Gualandi v. Adams,* 385 F.3d 236, 244 (2d Cir. 2004) (same); *Ireland v. Suffolk Cnty. of N.Y.,* 242 F. Supp. 2d 178, 185 (E.D.N.Y. 2003) (same). "When challenging subject matter jurisdiction under Rule 12(b)(1), defendants may present evidence 'by affidavit or otherwise' without converting their motion into one for summary judgment." *Xian Yong Zeng on behalf of Tie Liu v. Kerry*, 266 F. Supp. 3d 645, 647 (E.D.N.Y. 2017) (quoting *Kamen,* 791 F.2d at 1011 (citation omitted)); *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

## II. Federal Rule of Civil Procedure 56

Summary judgment pursuant to Fed. R. Civ. P. 56 "is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50, 255 (1986)). The party opposing summary judgment must set forth evidence demonstrating a genuine issue for trial, and may not rely solely on allegations in its pleadings. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). With respect to Defendants' summary judgment motion, the Court construes the facts in the light most favorable to the nonmoving party and resolves all ambiguities and draws all reasonable inferences against the movant. *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Nonetheless, "conclusory statement, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

When a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are disputed in the record presented on the motion, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the moving party. *Id.*; *see Vermont Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 242 (2d Cir. 2004) ("Fed. R. Civ. P. 56, governing summary judgment motions, does not embrace default judgment principles. . . . Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). In addition, "[a]lthough the failure to respond may allow the district court to accept the movant's factual assertions as true, see Local Civ. R. 56.2," *Vermont Teddy Bear,* 373 F.3d at 246, the district court "must be satisfied that the citation to evidence in the record supports the assertion." *Id.* at 244.

## DISCUSSION

As an initial matter, the Court liberally construes Plaintiff's *pro se* Fourth Amendment false arrest, Fifth Amendment malicious prosecution, and Fourteenth Amendment due process claims against Defendants Fernandez and Holt as an action pursuant to *Bivens*, 403 U.S. 388. *Bivens* governs violations by persons acting under color of federal law and is analogous to 42 U.S.C. § 1983, which governs actions against persons acting under color of state law. *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) ("[F]ederal courts have typically incorporated § 1983 law into *Bivens* actions."); *see also Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("A plaintiff bringing a claim under *Bivens* must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority."). "In a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any

7

statute specifically conferring such a cause of action." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

I. **Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

   A. **Plaintiff's Claims Against DHS Lack Subject Matter Jurisdiction**

In his Second Amended Complaint, Plaintiff alleges that Defendant DHS is "directly and vicariously liable" for the actions of Defendants Fernandez and Holt. (SAC, ¶ 41.) DHS is a federal agency and is thus immune from this action. "A *Bivens* claim against a federal agency is precluded, as an action against a federal agency is essentially a suit against the United States, and *Bivens* actions against the United States [are] barred under the doctrine of sovereign immunity." *Gault v. Social Security Administration*, No. 17-CV-703 (PKC), 2017 WL 1655192, at *2 (E.D.N.Y. May 2, 2017); *see also Robinson*, 21 F.3d at 510. DHS has not waived their sovereign immunity, nor has Plaintiff alleged any such waiver in his FAC or SAC. (Defs.' Br., Dkt. 42-2, at ECF 13); *see also Purcell for Estate of Tyree v. Bureau of Alcohol, Tobacco, & Firearms*, No. 17-CV-2742 (PKC)(RLM), 2017 WL 3700894, at *3 (E.D.N.Y. Aug. 25, 2017) (dismissing claims against federal Defendants because they did not waive their sovereign immunity and Plaintiff failed to raise any applicable waiver). Accordingly, DHS is immune from suit, and any claims for damages against it must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

   B. **Plaintiff's Due Process Claims Against Defendants Fernandez and Holt Lack Subject Matter Jurisdiction**

Plaintiff's due process claims under the Fourteenth Amendment also fail as a matter of law. This Circuit has consistently held that a due process claim under the Fourteenth Amendment "is untenable where the allegation is against federal agents acting under color of federal law." *Mahoney v. Nat'l Org. for Women*, 681 F. Supp. 129, 132 n.6 (D. Conn. 1987); *see also Shapiro v. Goldman*, No. 14-CV-10119 (NRB), 2016 WL 4371741, at *15 (S.D.N.Y. Aug. 15, 2016) ("[P]laintiff cannot assert a due process claim against the Government employee defendants under

the Fourteenth Amendment, which constrains the conduct of states, not the Federal Government."). Because Defendant Fernandez and Holt are federal agents who were acting under color of federal law, the Court lacks subject matter jurisdiction for any due process claim against them.

## II. Conversion of Defendants' Rule 12(b)(6) Motion to Dismiss to a Rule 56 Motion for Summary Judgment

On January 26, 2018, Defendants properly served Plaintiff with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), and a motion to dismiss under 12(b)(6), or in the alternative, a motion for summary judgment, pursuant to Fed. R. Civ. P. 56. (Dkt. 40.) "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Attached to Defendants' motion was the required Notice under Local Civ. R. 12.1, informing Plaintiff that if he failed to respond to the motion on time by filing sworn affidavits as required by Rule 56(c) and/or other supporting documents, the Court could convert Defendants' 12(b)(6) motion into one for summary judgment under Fed. R. Civ. P. 56. (Dkts. 42, 42-3); *see McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir. 1999) ("[A] district court need not advise a *pro se* litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice . . . or where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment.") (quoting *Vital v. Interfaith Medical Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999)); *see also Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) (allowing the Court to convert a motion to dismiss into a motion for summary judgment where there was "sufficient notice to [the] opposing party and an opportunity for the party to respond"). Because Plaintiff has failed to respond to Defendants' motion, despite having received the required Local Civ. R. 12.1 Notice, the Court converts Defendants' 12(b)(6) motion into one for summary judgment. *See In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.

1985) (conversion is appropriate where non-moving party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment").

      **A.**    **Unreasonable Seizure and False Arrest/False Imprisonment**

Plaintiff asserts a *Bivens* claim against Defendants Fernandez and Holt for unreasonable seizure and false arrest/false imprisonment[6] in violation of the Fourth Amendment. Fourth Amendment "[c]laims for false arrest, whether brought under § 1983, pursuant to *Bivens,* or under state law, are analyzed pursuant to the same standards as the applicable state law's false arrest tort." *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015). A plaintiff alleging false arrest under *Bivens* and applicable standards in New York must therefore establish that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (*per curiam*) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). A confinement is privileged if probable cause existed at the time of the arrest. *Nzegwu,* 605 F. App'x at 29 (citing *Jocks v. Tavernier,* 316 F.3d 128, 135 (2d. Cir. 2003)). Here, Defendants do not dispute that Plaintiff has established the first three elements of his false arrest claim. Plaintiff's claim, however, fails on the fourth element, because probable cause existed for his arrest on the Molly-related charges.

      **1. Probable Cause**

The Second Circuit has held that probable cause to arrest is a complete defense to a false arrest claim. *See Ackerson*, 702 F.3d at 19; *see also Gonzalez v. United States*, No. 16-CV-1494 (KAM), 2018 WL 1597384, at *10 (Mar. 31, 2018) ("Probable cause is a complete defense to both

---

[6] "Under New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements." *Mejia v. City of N.Y*., 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000).

Fourth Amendment and New York State law claims of false imprisonment.") (citing *Weyant v. Okst*, 101 F.3d 845, 852 (1996)). Probable cause to arrest exists where the evidence available is "sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (quoting *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993)). As the Supreme Court has clearly delineated, probable cause "is not a high bar" because it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018).

### a. Valid Warrant Presumption

Plaintiff was arrested pursuant to an arrest warrant issued by Magistrate Judge Scanlon in the Eastern District of New York. "Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007); *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991) (same). A party challenging a warrant on the ground that it was issued on less than probable cause thus bears a "heavy burden". *Golino,* 950 F.2d at 870; *see also Rivera v. U.S.*, 928 F.2d 592, 602 (2d Cir. 1991).

A plaintiff who seeks to challenge the validity of the warrant must make a "substantial preliminary showing" that (1) the affiant knowingly and intentionally, or with a reckless disregard for the truth, made false statements or omissions in his application for a warrant, and (2) such statements or omissions were necessary or otherwise essential to the finding of probable cause. *Rivera,* 928 F.2d at 604 (quoting *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978)); *see also Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir. 1994). "Unsupported conclusory allegations of falsehood or material omission" cannot support a challenge to the validity of the warrant; instead,

the plaintiff must make "specific allegations" supported by an offer of proof. *Velardi,* 40 F.3d at 573.

### b. Plaintiff Fails to Rebut the Presumption of Probable Cause

Plaintiff has failed to show that the arrest warrant issued by Judge Scanlon was a "facially invalid or that it was procured through fraud, perjury, or the misrepresentation or falsification of evidence." *Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *7 (S.D.N.Y. Mar. 9, 2017). Thus, Plaintiff cannot overcome the presumption that probable cause existed for his arrest. *See id.* Plaintiff does not dispute the facts related to his involvement leading to the controlled delivery in his FAC or SAC. Instead, he alleges that Defendants mischaracterized Plaintiff's conduct on April 29, 2013 as an "evasion", and that Defendant Fernandez "maliciously" falsified the rental date of the Mustang, *i.e.*, stating that it was "on or about April 29, 2013", when it was April 24, 2013. (FAC and SAC at ¶¶ 29-31.) Defendants respond by arguing that (1) Defendant Fernandez's affidavit accurately characterized Plaintiff as having evaded and fled law enforcement on April 29, 2013, and (2) even if the affidavit incorrectly identified the rental date as April 29, 2013, this error was of no legal consequence with regard to Judge Scanlon's finding of probable cause. (Defs.' Br. at ECF 22-23.)

First, Plaintiff cannot establish that Defendant Fernandez's statement that Plaintiff "evaded arrest and left the scene on foot" (Ex. 1 at ECF 9, ¶ 12) was false or inaccurate. It is undisputed that Plaintiff entered the UPS store on April 29, 2013; that he walked away from the scene after seeing federal agents move in to arrest his companion, Individual 1; that Plaintiff abandoned his rented Mustang, leaving it double-parked in front of the UPS store; and that he left New York soon thereafter for California, where he was arrested on July 2, 2013. (FAC and SAC at ¶¶ 2-3, 16-20, 25, 32; *see also Black*, 13-CR-316, Dkt. 39, Transcript of Criminal Cause for Arraignment, at 5:6-11.) Based on the totality of the circumstances, *see Manganiello v. City of N.Y.*, 612 F.3d 149, 161

(2d Cir. 2010), Fernandez's characterization of Plaintiff as having evaded arrest by leaving the scene on foot on April 29, 2013 was fair and accurate.

Second, Defendant Fernandez's statement regarding the date on which Plaintiff rented the Mustang, even if inaccurate, is immaterial to the probable cause determination. The fact that the rental date was identified in the affidavit as April 29, 2013, as opposed to April 24, 2013, does not undermine the existence of probable cause, since both dates are consistent with the conclusion that Plaintiff drove the Mustang to the UPS store on April 29, 2013 to pick up the shipment of Molly. Furthermore, there is no evidence that any error with respect to the rental date was the product of malice or a reckless disregard for the truth. Thus, Defendant Fernandez's alleged misstatement regarding the rental date did not amount to material "fraud, perjury, or the misrepresentation or falsification of evidence." *Vasquez,* 2017 WL 946306, at *7.

Plaintiff, therefore, cannot demonstrate that Defendant Fernandez's affidavit contained false or misleading statements, and has failed to rebut the presumption of probable cause in this case. *Rivera,* 928 F.2d at 604. Because "[t]he existence of probable cause is an absolute defense" to Plaintiff's claim of false arrest, *Valdez v. U.S.*, No. 08-CV- 4424 (RPP), 2009 WL 2365549, at *8 (S.D.N.Y. July 31, 2009), this claim is dismissed. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.").

### B. Malicious Prosecution

Plaintiff was prosecuted in the Eastern District of New York, and therefore New York law applies to his malicious prosecution claim under 28 U.S.C. § 1346(b)(1). For a malicious prosecution claim to stand, Plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for

defendant's actions." *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Plaintiff must also allege some "post-arraignment deprivation of liberty" that is made "pursuant to legal process." *Singer*, 63 F.3d at 117. The Second Circuit has held that New York law pertaining to probable cause is the controlling standard for a *Bivens* action for malicious prosecution. *See Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003).[7]

In this case, Plaintiff was indicted by a grand jury (*Black*, 13-CR-316, Dkts. 13, 55, 120). It is well established that an "indictment by a grand jury creates a presumption of probable cause." *Savino*, 331 F.3d at 67. This presumption can only be challenged if "a jury could reasonably find that the indictment was secured through bad faith or perjury". *Boyd v. City of N.Y.*, 336 F.3d 72, 77 (2d Cir. 2003). Plaintiff provides no evidence, and identifies no instances, of bad faith or false testimony presented by Defendants in the grand jury in connection with the original and superseding indictments returned against Plaintiff. (*See Black*, 13-CR-316, Dkts. 13, 55, 120.) Plaintiff thus fails to rebut the presumption of probable cause based on his indictment, *Savino*, 331 F.3d at 72, and his malicious prosecution claim must be dismissed.

---

[7] Given the undisputed facts underlying Plaintiff's arrest, the Court finds that Defendants would also be entitled to summary judgment with regard to qualified immunity, given the existence of a valid arrest warrant. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [, *United States v. Leon,* 468 U.S. 897, 923 (1984)], will the shield of immunity be lost." *Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir. 1990) (quoting *Malley v. Briggs,* 475 U.S. 335, 344–45 (1986)). Here, the warrant application did not lack indicia of probable cause, and thus Defendants would be entitled to qualified immunity based on its issuance.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and motion for summary judgment are granted. The Clerk of Court is directed to enter judgment for Defendants and terminate this action.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: September 5, 2018
       Brooklyn, New York